UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SULZER MIXPAC AG,

                        Plaintiff,

    -against-

KETTENBACH GMBH AND CO. KG,
KETTENBACH LP, and XINIAL SYSTEMS
GMBH AND CO. KG,

                      Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-6613 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this patent infringement action, is Defendants' Kettenbach GmbH & Co. KG ("Kettenbach GmbH"), Kettenbach LP (together, "Kettenbach"), and Xinial Systems GmbH & Co. KG ("Xinial," collectively, "Defendants") motion for leave to file Amended Answers and Counterclaims. *See* Letter Motion to Amend Answer to Complaint, Counterclaim ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [65]. By way of Complaint dated November 26, 2021, Plaintiff Sulzer Mixpac AG ("Plaintiff" or "Mixpac") commenced this action against Defendants for: (i) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (ii) infringement of U.S. Trademark Registration No. 5,688,539; (iii) infringement of U.S. Patent Registration No. 9,010,578 (the "'578 Patent"); (iv) false designations of origin in violation of 15 U.S.C. § 1125(a); (v) unfair competition under 15 U.S.C. § 1125; (vi) common law trademark infringement; (vii) common law unfair competition; (viii) deceptive trade practices in violation of New York General Business Law ("NYGBL") § 349; and (ix) false

1

advertising in violation of NYGBL § 350. *See* Complaint ("Compl."), DE [1]. Defendants counterclaimed for cancellation of the '539 Trademark due to: (i) lack of a *bona fide* intent to use under Section 44(e) of the Lanham Act, 15 U.S.C. § 1126, and (ii) abandonment under Section 45 of the Lanham Act, 15 U.S.C. § 1127. *See* Answer to Complaint, Counterclaim by Kettenbach LP ("Kettenbach LP CC"), DE [20]; Answer to Complaint, Counterclaim by Kettenbach GmbH & Co. KG ("Kettenbach GmbH CC"), DE [37]; Answer to Complaint, Counterclaim by Xinial Systems GmbH & Co. KG ("Xinial CC"), DE [38]. Defendants move to amend their respective Answers and Counterclaims seeking to add a defense and counterclaim that the '578 Patent is unenforceable due to inequitable conduct. *See* Defs.' Mot. For the reasons set forth below, the Court grants Defendants' Motion.

## I.   BACKGROUND

### A. Relevant Facts

The facts below are taken from the Complaint, Answers and Counterclaims, and the parties' submissions, and are assumed true for purposes of deciding this motion.

#### 1. The Parties and the Products

Mixpac is a corporation with its principal place of business in Haag, Switzerland and is a provider of dental products. Compl. ¶¶ 1, 8. Kettenbach GmbH and Xinial are related German corporations with their principal places of business at the same address in Eschenburg, Germany. *Id.* ¶¶ 9, 11. Kettenbach LP is a registered Delaware limited partnership with its principal place of business also in

2

Eschenburg, Germany, and it maintains a regular place of business at 62-64 Enter Lane, Islandia, New York.  *Id*. ¶ 10.

Plaintiff is the manufacturer of a proprietary system for mixing liquid components for dental applications, known as the Mixpac Cartridge Mixing System ("Mixpac System"), which has been sold under the Mixpac brand since 1997.  *Id*. ¶ 28. The Mixpac System consists of: (i) a dispenser-like caulking gun; (ii) a cartridge containing two-part chemical components, such as an epoxy with a catalyst and a resin; and (iii) a mixing tip that mixes the chemicals before they are applied.  *Id*. ¶ 29.  The mixing tips attach to the cartridges to mix the components while the dispenser pushes the components from the cartridge into the mixing tip for application by the dentist.  *Id*.  Plaintiff sells its system to formulators or material manufacturers like Defendants who fill the cartridges with their own dental materials, and then sell Mixpac's dispensers and mixing tips with filled cartridges. *Id*. ¶ 31.  Plaintiff does not sell filled cartridges.  *Id*. ¶ 32.  According to Mixpac, its products and brand are well-known in the dental industry, and it has received several awards for the Mixpac System.  *Id*. ¶¶ 31, 33.

Plaintiff claims that Defendants conspired to make, import and sell dental cartridge mixing systems under the Kettenbach brands Futar, Identium, Panasil and Silginat (the "Accused Products") by creating a company, Xinial, to copy the Mixpac System and to deliver it to Plaintiff's customers.  *Id*. ¶ 2.  Mixpac alleges that the Accused Products include filled two-component cartridges and mixing tips.  *Id*. ¶ 37. According to Plaintiff, Kettenbach GmbH controls Xinial and directs the sale and

importation of the Accused Products to the United States while Kettenbach LP distributes these products from its New York location to Mixpac's customers including at the Greater New York Dental Meeting ("GNDYM"), the world's largest annual dental conference. *Id.* ¶ 2. Plaintiff claims that Defendants have introduced its own system by falsely claiming less waste and higher quality and passes off the Mixpac System as its own infringing on Mixpac's trademarks and patented technology. *Id.* ¶¶ 3-4.

### 2. *Defendants' Advertisements*

Plaintiff alleges that Defendants have made several false claims about the Accused Products compared to the Mixpac System and identifies five false advertisements. Mixpac claims that Kettenbach's ads intentionally mislead customers into buying the Accused Products instead the Mixpac System. *Id.* ¶ 47.

Initially, Kettenbach advertised that the Accused Products waste less material and result in "20% less residual amount in your mixing tip." *Id.* ¶ 58. Plaintiff claims that because Kettenbach has already used the Mixpac System to sell its products for many years, the claim directly compares the Mixpac System with the Accused Products. *Id.* ¶ 59. Plaintiff alleges that this claim is quantitative, not subject to different meaning, and literally false in that the Accused Products actually waste between 11% and 39% more than the Mixpac System. *Id.* ¶¶ 60-61. According to Mixpac, this advertisement is also misleading by omitting material information and creating a false impression because it fails to disclose that Defendants' products waste more than the Mixpac System. *Id.* ¶ 62. Plaintiff claims that customers will see the claim of less residual waste and will believe its false or misleading meaning—

4

that use of the Accused Products' mixing tips will lead to money savings, better mixing quality, or are compatible with the Mixpac System—and this has injured Plaintiff by diverting sales and lessening its goodwill. *Id.* ¶¶ 63-64.

Defendants' next advertisement states, "Continue to rely on our quality products 'Made in Germany'" while also showing the Mixpac System's mixing tips. *Id.* ¶¶ 65-66. According to Plaintiff, all Mixpac Systems are made in Switzerland, and its origin is material to the customer's purchase decision, and the false statement that the products are "Made in Germany" deceives customers and induces them to buy the Accused Products. *Id.* ¶¶ 67-69. Plaintiff alleges that the Made in Germany claim is misleading by creating a false impression that Kettenbach makes the Mixpac System, which in turn convinces the customer to trust the Accused Products and omits material information about who makes the Mixpac System. *Id.* ¶¶ 70-71. Plaintiff claims this has diverted sales from Mixpac and lessened its goodwill. *Id.* ¶ 72.

Next, Plaintiff claims Kettenbach advertisements state "get out even more of your favorite impression materials, such as Futar, Silginat, Panasil, and Identium, than before," and because Defendants have sold their own dental material using the Mixpac System for many years, this is a direct comparison between the Mixpac System and the Accused Products. *Id.* ¶¶ 73-74. According to Plaintiff, this claim is false because the Accused Products result in higher waste per mixing tip compared to the Mixpac mixing tips. *Id.* ¶ 75. Plaintiff also claims that this advertisement is misleading by creating a false impression that the Accused Products will save more

material, but that Defendants know that their products waste more than the Mixpac System. *Id.* ¶ 76. Plaintiff further alleges that the ad omits material information—that Kettenbach's Accused Products lead to more residual waste when compared to Mixpac mixing tips. *Id.* ¶ 77. Plaintiff claims that customers will be misled by the implied meaning in that use of the Accused Products will lead to money savings, better mixing, and that the Mixpac System and the Accused Products systems are compatible. *Id.* ¶ 78. According to Plaintiff, the claim is deceptive or has the capacity to deceive, is material, and has injured Mixpac by diverting sales and lessening its goodwill. *Id.* ¶ 79.

Next, Plaintiff claims that Kettenbach advertises that "green becomes blue" and "yellow becomes red" while showing Mixpac mixing tips, falsely indicating that the Mixpac System has "become" the Accused Product, but asserts that the systems are incompatible. *Id.* ¶¶ 80-84. Plaintiff also alleges that this advertisement is misleading by implying that the Accused Products are the same as or compatible with the Mixpac System, and that the false implication is amplified because the same ad contains the Made in Germany claim. *Id.* ¶ 85. According to Plaintiff, the advertisement omits material information about the lack of compatibility of the Accused Products and the Mixpac System. *Id.* ¶ 86. Mixpac claims that customers will believe this ad's implied meaning—that the Accused Products are compatible with the Mixpac System—discover that it is false, have to buy different cartridges and mixing tips, and train staff how to use the Accused Products. *Id.* ¶¶ 87-88. According to Plaintiff, this claim is deceptive or has the capacity to deceive, is

material, and has injured Mixpac by diverting sales and lessening its goodwill.  *Id*. ¶ 89.

Finally, Plaintiff alleges that Kettenbach advertises that the blue and red Accused Products are "unmistakable" and use a "unique color coding" so there is "no confusion with other mixing systems." *Id*. ¶ 90.  According to Mixpac, this claim is false because other competitors use blue or red for color coding.  *Id*. ¶ 91.  Plaintiff also alleges that the advertisement is misleading because it implies that Kettenbach's colors red and/or blue are unique, and that the system would not be confused with other systems.  *Id*.  Plaintiff claims this ad omits material information related to availability of other mixing tips and cartridge caps in red and blue, and customers will believe the implied meaning—that Kettenbach is the only seller of red and blue mixing tips and cartridges—which is false.  *Id*. ¶¶ 91-92.  Mixpac alleges this claim deceptive or has the capacity to deceive, is material, and has injured Plaintiff by diverting sales and lessening its goodwill.  *Id*. ¶ 93.

### 3. *Mixpac's Trademark*

Mixpac owns U.S. Trademark Registration No. 5,688,539, for its X design mark (the "X Mark" or the "'539 Trademark"), "MIXPAC Mark," and certain "Mixpac Trade Dress."  *Id*. ¶ 44.  Plaintiff claims it has used its distinctive X Mark with the Mixpac System to indicate Mixpac as its source since at least 2013.  *Id*. ¶ 38.  Plaintiff alleges that the X Mark is well-known in the dental industry as a source indicator for the Mixpac System, and that customers buy mixing tips based on the X Mark.  *Id*. ¶¶ 39-40.  The X Mark is stamped on Mixpac's mixing tips, and Plaintiff claims it has

delivered advertisements directing customers to "look for" the Mixpac brand including the X Mark. *Id*. ¶ 40. Plaintiff claims that the X Mark is inherently distinctive and that due to Mixpac's advertising and use on its products, the X Mark has acquired secondary meaning as the relevant public has come to associate the X Mark with a single source—Mixpac. *Id*. ¶ 41. According to Plaintiff, since 2010, it has spent hundreds of thousands of dollars in advertising featuring the X Mark through a variety of media and methods including publications, websites, social media and giveaways during dental industry trade shows such as the annual GNYDM. *Id*. ¶¶ 42-43.

Mixpac claims that Defendants' products include a stylized "X" logo that is confusingly similar to Mixpac's X Mark. *Id*. ¶ 45. According to Mixpac, because the Defendants use an X logo on competing dental products, coupled with their false and/or misleading advertisements, this will cause a likelihood of confusion and creates a false association of origin that Defendants make the Mixpac System. *Id*. ¶ 46. Plaintiff claims that Defendants were aware of Mixpac's registered X Mark prior to using its own confusingly similar X logo on the Accused Products, but still made the products and contracted with third parties to sell their products with a similar X logo in the United States. *Id*. ¶ 102.

Defendants counter that Mixpac sought and obtained the '539 Trademark based on a foreign registration for the mark under Section 44(e) of the Lanham Act, which required Mixpac to declare its *bona fide* intent to use the alleged Mixpac X Mark in United States commerce for the registered goods. Kettenbach LP CC ¶¶ 11-

8

12; Kettenbach GmbH CC ¶¶ 11-12; Xinial CC ¶¶ 11-12. They allege that Mixpac's May 11, 2017 application resulting in the '539 Trademark stated, "The applicant has a *bona fide* intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services . . .," but at the time, Mixpac lacked such intent to use the X Mark in United States commerce for the registered goods. Kettenbach LP CC ¶¶ 13-14; Kettenbach GmbH CC ¶¶ 13-14; Xinial CC ¶¶ 13-14. According to Defendants, Mixpac lacked the requisite intent to use the X Mark at the time the registration issued on March 5, 2019 and still has not demonstrated a *bona fide* intent to use the X Mark in United States commerce. Kettenbach LP CC ¶¶ 15-16; Kettenbach GmbH CC ¶¶ 15-16; Xinial CC ¶¶ 15-16. While Mixpac may use a stylized MIXPAC Mark, Defendants claim this mark is different from the X Mark, and that they have different commercial impressions. Kettenbach LP CC ¶ 17; Kettenbach GmbH CC ¶ 17; Xinial CC ¶ 17. Defendants further allege that the X Mark does not appear on Mixpac's website or in advertisements of any of its products. Kettenbach LP CC ¶ 18; Kettenbach GmbH CC ¶ 18; Xinial CC ¶ 18.

### 4. *Mixpac's Patent*

On April 21, 2015, the United States Patent and Trademark Office ("USPTO") issued the '578 Patent, entitled "Discharge Arrangement having a Connecting Device between a Multi-Component Cartridge and an Accessory Part," to inventor Wilhelm A. Keller ("Keller"). Compl. ¶ 94; *see* Compl. Ex. 3. Mixpac owns the right, title and interest in the '578 Patent, including the exclusive right to enforce the patent in the United States, because Keller assigned his interest in the '578 Patent to Medmix

Systems AG ("Medmix") on December 10, 2011 as recorded on April 5, 2012, and Medmix assigned its interest in the patent to Mixpac on May 23, 2019 as recorded on June 13, 2019 at the USPTO.  Compl. ¶ 95.  Keller is now deceased.  Pl. Opp. at 2.

Mixpac alleges that the Accused Products infringe on claim 1 of the '578 Patent.  Compl. ¶ 96; *see also* Compl. Exhibit C.  Plaintiff also contends that the patent is valid and enforceable, and that Defendants were aware of the validity of the patent but still made and contracted with third parties to sell the Accused Products in the United States.  Compl. ¶¶ 98-99.

Defendants counter that the '578 Patent is unenforceable due to inequitable conduct because Keller and/or his prosecuting attorney failed to disclose Canadian Patent No. 1,238,023 ("Yu") to the USPTO during the '578 Patent's prosecution.  *See* Defs.' Mot. at 1; Defs.' Mot. App'x A ("Kettenbach LP PACC") ¶ 37.[1]  They claim that Keller, the inventor of the '578 Patent, and/or his prosecuting attorney knew of information material to the patentability prior to filing the application and withheld that information with a specific intent to deceive the USPTO.  Kettenbach LP PACC ¶ 37.  But for that material information being withheld, at least claim 1 of the '578 Patent would not have been allowed.  *Id.*

Defendants further allege that Keller is the named inventor on several other patents related to mixing device technology, such as U.S. Patent No. 5,788,122 (the "'122 Patent"), which was filed as U.S. Patent Application No. 08,091,294 (the "'294

---

[1] Defendants seek include a defense and cause of action for inequitable conduct in their proposed Amended Answers and Counterclaims.  Because the amendments are identical, the Court only cites to Appendix A.  *See generally* Defs.' Mot. App'x A-C.

Application"). *Id*. ¶ 38. During prosecution of the '122 Patent, claims 1, 2, 4-6, and 8-17 were rejected as obvious in view of U.S. Patent No. 2,715,480 ("Livingstone"), U.S. Patent No. 2,815,895 ("Reed"), U.S. Patent No. 4,241,855 ("Yoshioka"), U.S. Patent No. 4,995,540 ("Colin"), European Patent Application No. 0,182,217 ("Schneider"), and Yu. *Id*. Specifically, the USPTO Examiner rejected: (i) claims 1, 2, 4, 8, 9, 11 and 12 on the basis of Colin, Yu, and Yoshioka or Schneider; (ii) claims 5, 6 and 10 on the basis of Colin, Yu, and Yoshioka or Schneider, taken further in view of Livingstone; and (iii) claims 13 through 17 on the basis of Colin, Yu, and Yoshioka or Schneider, taken further in view of Reed. *Id*.

Defendants allege that Keller appealed the final office action in Appeal No. 95-2880. *Id*. ¶ 39. The Board, however, sustained the rejections of claims 1, 2 and 8 as unpatentable over Colin in view of Yu and Yoshioka, and it also sustained the rejections of these claims as unpatentable over Colin in view of Yu and Schneider. *Id*. ¶ 40. With respect to Yu, the Board stated that "the Yu reference discloses a single cartridge caulking gun that has a detachable nozzle," and that "the nozzle 12 is attached to the end of the discharge nipple 22 by means of a connection comprising a circular bead 26 provided at the dispensing end of the nipple and a corresponding groove 50 provided in the mounting end of the nozzle," which "would appear inherently to be rotatable on its bead and groove connection to the same extent as . . . [Keller]'s attachment." *Id*. The Board concluded that "Yu would have taught one of ordinary skill in the art that screw threads and bead-and-groove arrangements are

alternative means for attaching nozzles and like attachments to the discharge ends of dispensing devices." *Id.*

According to Defendants, Yu is one of the references asserted by Xinial in its inter partes review ("IPR") petition against the '578 Patent, which Defendants seek to incorporate by reference into their Amended Answers and Counterclaims. *Id.* ¶ 41; *see Xinial Systems GmbH & Co. KG v. Sulzer Mixpac AG.*, IPR2022-01462; Defs.' Mem. Ex. 3. They claim that the IPR petition demonstrates why Yu is material to the patentability of the '578 Patent and why Yu, in combination with other references, renders obvious at least claim 1 of the '578 Patent. *Id.* They allege that Yu discloses a screw-thread attachment design between a discharge cartridge and a nozzle/mixing tip, which is the same screw-thread attachment design that the Board discussed when it found claims in Keller's '294 Application obvious. *Id.* According to Defendants, during the '578 Patent prosecution, the applicant relied heavily on the thread-groove design to get the patent claims allowed, but that Yu discloses the same type of design that allows for the "constrained lifting." *Id.* ¶¶ 42-43. Defendants fail to indicate whether the '578 Patent "applicant" and Keller are the same individual, however. They further allege that Yu discloses elements of the claims that the patentee argued were missing from the prior art—the very limitation the patent applicant added to claim 1 for the '578 Patent. *Id.* ¶ 43. Defendants contend that had Yu been disclosed to the USPTO, it would not have allowed at least claim 1 of the '578 Patent. *Id.* ¶ 44.

In sum, Defendants allege that Keller, and/or his prosecution counsel, knew of the Yu reference and that it was material to the patentability of the '578 Patent, in part because of the prosecution of the '122 Patent and Appeal No. 95-2880, but deliberately withheld it from the USPTO with deceptive intent. *Id*. ¶ 46. But for withholding the Yu reference and the Board's decision in Appeal No. 95-2880, at least claim 1 of the '578 Patent would not have issued. *Id*. As a result, they contend the patent is unenforceable due to inequitable conduct. *Id*.

## B. Procedural History

On November 26, 2021, Plaintiff commenced this action against Defendants for: (i) false advertising, in violation of Section 43(a) of the Lanham Act; (ii) infringement of the '539 Trademark; (iii) infringement of the '578 Patent; (iv) false designations of origin in violation of 15 U.S.C. § 1125(a); (v) unfair competition under 15 U.S.C. § 1125; (vi) common law trademark infringement; (vii) common law unfair competition; (viii) deceptive trade practices in violation of NYGBL § 349; and (ix) false advertising in violation of NYGBL § 350. *See* Compl. Kettenbach GmbH, Kettenbach LP, and Xinial answered and counterclaimed for cancellation of the '539 Trademark due to: (i) lack of a *bona fide* intent to use under Section 44(e) of the Lanham Act, and (ii) abandonment under Section 45 of the Lanham Act. *See* DEs [20], [37], [38].

This Court was assigned to oversee discovery and held an initial conference with the parties on March 14, 2022 during which the parties' proposed scheduling order was so ordered. *See* DE [34]. Status conferences were held on July 11 and November 15, 2022 where the parties reported that discovery was ongoing. *See* DEs

[52], [60].  The parties subsequently filed three joint proposed amended scheduling orders extending discovery deadlines in this case, including the deadline for motions to join/amend to and including January 20, 2023, which the Court granted.  *See* DEs [53], [55], [64]; January 3, 2023 Electronic Order.  In the meantime, the parties submitted their claim construction briefs, replies and sur-replies on October 12, November 11 and November 28, 2022 respectively to the Honorable Gary R. Brown, the District Judge assigned to this case.  *See* DEs [56]-[59], [63].

On January 20, 2023, Defendants moved to amend their respective Answers and Counterclaims seeking add a defense and counterclaim that the '578 Patent is unenforceable due to inequitable conduct.  *See* Defs'. Mot.  Defendants filed proposed Amended Answers and Counterclaims with their motion.  *See* Defs.' Mot. App'x A, B, C, DEs [65-6], [65-7], [65-8].  Plaintiff opposes.  *See* Plaintiff's Letter Opposing Leave to Amend Answer and Counterclaims ("Pl. Opp."), DE [66].  For the reasons set forth below, the Court grants Defendants' Motion.

## II.   LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that, after the period for amendment as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2); *see Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).  A court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)).

"Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-0254, 2018 WL 1335358, at *3-4 (E.D.N.Y. Mar. 15, 2018) (quoting *MHANY Mgmt. v. County of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012)); *see Johnson v. Landmark Hosp. LLC*, No. 14-CV-6839, 2016 WL 843286, at *2 (E.D.N.Y. Mar. 1, 2016) (quoting *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)). Leave to amend should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). The party opposing a motion to amend bears the burden of establishing that the amendment should be denied. *See Joinnides v. Floral Park–Bellerose Union Sch. Dist.*, No. 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.'") (quoting *Cummings–Fowler v. Suffolk Cty. Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012)).

"[D]elay alone, in the absence of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023(CBA)(RLM), 2010 WL 1257803, at *11 (E.D.N.Y. Mar. 26, 2010) (Defendant's three-month delay "to have additional discovery before drafting its amended pleading is entirely understandable . . . especially when contrasted with far longer delays that have been tolerated by courts in granting motions to amend.") (collecting cases); *see Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC) (HBP),

15

2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and collecting Second Circuit cases allowing amendments after delays ranging from two to five years); *Pall Corp. v. Cuno Inc.*, 681 F. Supp. 2d 258, 264-65 (E.D.N.Y. 2010) (although the two related cases had been pending for twelve and six years, no trial date had yet been set).

Next, "'[t]he futility of an amendment is determined by whether it could survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) . . . .'" *E&E Co. v. London Luxury LLC*, 571 F. Supp. 3d 64, 67 (S.D.N.Y. 2021) (quoting *R & M Jewelry, LLC v. Michael Anthony Jewelers, Inc.*, 221 F.R.D. 398, 399 (S.D.N.Y. 2004)). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).

Finally, in determining whether to grant leave to amend pleadings, among the "most important" issues to consider is prejudice to the opposing party. *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotations omitted); *see Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *2 n.1

(S.D.N.Y. Oct. 17, 2016) ("[T]he existence of prejudice would counsel against granting relief under [Rule 15]."). In analyzing prejudice, courts consider whether the amendment would: (1) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (2) significantly prolong the resolution of the action, or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. N.Y. City Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). Undue or substantial prejudice occurs when the nonmoving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered. *See MHANY Mgmt. Inc. v. County of Nassau*, 843 F. Supp. 2d 287, 341-42 (E.D.N.Y. 2012), *aff'd in part, vacated in part, remanded on other grounds*, 819 F.3d 581 (2d Cir. 2016). "'The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial.'" *Nycomed U.S. Inc.*, 2010 WL 1257803, at *12 (quoting *Kirkland v. City of New York*, No. 06 CV 0331(NG)(CLP), 2007 WL 1541367, at *3 (E.D.N.Y. May 25, 2007)).

## III.  DISCUSSION

The "elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). Individuals associated with the filing or prosecution of a patent include inventors,

attorneys, assignees and applicants—all of whom have a duty to disclose information material to patentability, and withholding such information renders a patent unenforceable due to inequitable conduct. *See* 37 C.F.R. § 1.56; *Exergen Corp.*, 575 F.3d at 1326-27.

When pleading inequitable conduct, a defendant must comply with Fed. R. Civ. P. 9(b), which requires that the circumstances constituting fraud or mistake be stated with particularity. *E&E Co.,* 571 F. Supp. 3d at 67-68 (citing *Exergen Corp.*, 575 F.3d at 1326 (quoting Fed. R. Civ. P. 9(b)).  In this context:

> the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO . . . [and] must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp.*, 575 F.3d at 1328-29.  Relevant here, several courts, including the Court of Appeals for the Federal Circuit, have held that use of "and/or" pleading when referring to individuals associated with the filing of a patent fails to satisfy Rule 9(b)'s requirements.  *Exergen Corp.*, 575 F.3d at 1329 (pleading referring to "Exergen, its agents and/or attorneys" was insufficient to satisfy the "who" requirement); *E&E Co.*, 571 F. Supp. 3d at 70 (collecting cases); *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 CIV. 11098 (ER), 2020 WL 1331919, at *6 (S.D.N.Y. Mar. 23, 2020) (finding that Defendant's "use of the term 'and/or'" entailed that Defendant had "failed to allege that any one individual both (1) knew that the '138 publication was material and (2) withheld it from the PTO with the intent to deceive").

Plaintiff initially argues that the Court should deny Defendants' motion to amend their Answers and Counterclaims to include a defense and claim of inequitable conduct as to the '578 Patent because Defendants caused undue delay in moving to amend the pleadings nine months after their alleged discovery of the Yu reference, and on the last day of the deadline to amend pleadings, and that this delay caused undue prejudice. Pl. Opp. at 1-2. Mixpac further argues that the amendment is futile in that Defendants fail to identify the "who" with specific intent to deceive the USPTO under Rule 9(b). *Id.* at 2.

Applying the standards outlined above, leave to amend is granted. Initially, while nine months passed between when Defendants became aware of the Yu reference to when they sought leave to amend their Answers and Counterclaims, Defendants' Motion was filed within the deadline for parties to amend their pleadings under the Court's scheduling order. *See* DE [64]; January 3, 2023 Electronic Order. Moreover, Defendants argue their delay is related to further discovery on the Yu reference taken to support their inequitable conduct claim. Defs.' Mot. at 2-3. Accordingly, Plaintiff has failed to sufficiently establish undue delay.

Next, the amendment is not futile as Defendants satisfy the pleading requirements under Rule 9(b). As set forth above, Defendants contend that Keller, and/or his prosecution counsel, knew of the Yu reference and that it was material to the patentability of the '578 Patent because of the prosecution of the '122 Patent and appeal, but deliberately withheld it from the USPTO with deceptive intent. Kettenbach LP PACC ¶¶ 38-46. But for withholding the Yu reference and the Board's

decision in the appeal, at least claim 1 of the '578 Patent would not have issued. *Id.* ¶ 46. The Court concludes that these allegations satisfy the particularity standard under Rule 9(b). Although Plaintiff contends that Defendants use "and/or" pleading, *see* Pl. Opp. at 2, here, "Keller and/or his prosecution counsel" is a distinction without a difference. The prosecution counsel represented Keller in the patent application, and allegations against Keller alone are sufficient under Rule 9(b) for an inequitable conduct claim. Court decisions that rejected "and/or" allegations involving two or more individuals are distinguishable because they did not refer to a specific individual with both knowledge of materiality and specific intent to deceive the USPTO. *See Exergen Corp.*, 575 F.3d at 1329 (pleading referring to "Exergen, its agents and/or attorneys" was insufficient to satisfy the "who" requirement); *E&E Co.*, 571 F. Supp. 3d at 69-70 (concluding that allegations of "'E&E and/or Mr. Lightsey'" and "'E&E, Mr. Lightsey, and/or attorney Sockol'" fails to identify a single individual who both was aware of material information and acted with intent to deceive); *Signify N. Am. Corp.*, 2020 WL 1331919, at *6-7 (finding that Defendant's allegations of "Lys, Morgan and/or Teja" lacked the specificity to satisfy Rule 9(b)). Here, however, Defendants sufficiently allege that a single individual, Keller, the inventor of the '578 Patent, knew of the Yu reference and intentionally withheld that material information with specific intent to deceive the USPTO. Moreover, while it is not clear in the proposed allegations whether Keller was also the applicant for the '578 Patent, inventors associated with a patent application have a duty to disclose to the USPTO

information material to patentability, making the allegations against Keller sufficient for an inequitable conduct counterclaim.

While Mixpac also contends that because Keller is now deceased and Defendants do not have any documents from him that relate to the '578 Patent that would establish the requisite intent for an inequitable conduct claim, *see* Pl. Opp. at 2, Defendants need not prove Keller's intent at this stage of the litigation. Rather, they only need to sufficiently allege that Keller had both the requisite knowledge and intent to deceive under Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Accordingly, the Court concludes that Defendants satisfy the pleading requirements for an inequitable conduct counterclaim and, therefore, the amendment is not futile.

Finally, Mixpac has failed to establish prejudice that would result by granting Defendants leave to file their proposed Amended Answers and Counterclaims. Defendants filed their motion to amend within the scheduling order deadline, and fact discovery is still open with no trial date set. As a result, any discovery concerning the inequitable conduct counterclaim would not unduly delay the case, unfairly disadvantage Plaintiff, or deprive Mixpac of the opportunity to present facts or evidence to defend the claim. Accordingly, Defendants' motion for leave to amend is granted.[2]

---

[2] Mixpac requests that should the Court grant Defendants' Motion, it seeks leave to file a motion to dismiss. *See* Pl. Opp. at 3. Plaintiff is directed to comply with Judge Brown's individual rules regarding dispositive motion practice once Defendants file their proposed Amended Answers and Counterclaims as separate docket entries pursuant to this Memorandum and Order. The Court cautions, however, that, as set forth above, the standards under Rule 12(b)(6) and 15(a) are the same. Accordingly, because the Court has already considered Defendants' amended pleadings here, Plaintiff should refrain from making a second motion that simply rehashes the arguments addressed here.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion is granted in its entirety, and they are ordered to file their proposed Amended Answers and Counterclaims, submitted as DEs [65-6], [65-7], [65-8], as separate docket entries by May 30, 2023.


Dated:  Central Islip, New York
        May 2, 2023

**SO ORDERED.**

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge