UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MEDMIX SWITZERLAND AG,

                              Plaintiff,                        **MEMORANDUM AND ORDER**

            -against-                                        21-cv-06613 (RER)(SIL)

KETTENBACH GMBH AND CO KG,
KETTENBACH LPS, and
XINIAL SYSTEMS GMBH AND CO. KG,

                              Defendants.
----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this false advertising-patent infringement-unfair competition case are Plaintiff medmix Switzerland AG's (formerly known as Sulzer Mixpac AG) ("Plaintiff" or "Medmix") motion to sever and stay the patent infringement claim asserted in this action, Count III, *see* Docket Entry ("DE") [93] ("Plaintiff's Motion" or "Pl. Mot."), and Defendants Kettenbach GmbH & Co. KG's ("Kettenbach GmbH"), Kettenbach LP's and Xinial Systems GmbH & Co. KG's ("Xinial", collectively "Defendants") cross-motion to stay the action in its entirety, *see* DE [94] ("Defendants' Cross-Motion" or "Defs. Cross-Mot."). By way of Complaint ("Compl."), DE [1], filed on November 26, 2021, Plaintiff commenced this action alleging: (i) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (ii) infringement of U.S. Trademark Registration No. 5,688,539 (the "'539 Trademark"); (iii) infringement of U.S. Patent Registration No. 9,010,578 (the "'578 Patent"); (iv) false designations of origin in violation of 15 U.S.C. § 1125(a); (v) unfair competition under 15 U.S.C. § 1125; (vi) common-law trademark

1

infringement; (vii) common-law unfair competition; (viii) deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349 and (ix) false advertising in violation of N.Y. Gen. Bus. Law § 350.  *See* Compl., ¶¶ 106-183.

On September 14, 2022, Xinial filed a petition for *inter partes* review of the '578 Patent with the Patent Trial and Appeal Board (the "PTAB").  *See* Pl. Mot. at 1; *Medmix Switzerland AG v. Xinial Systems GmbH & Co. KG*, No. 24-CV-1516, DE [1-2] ("Notice of Appeal"), at 9 (Fed. Cir. Feb. 29, 2024).  On May 4, 2023, each Defendant filed an Amended Answer to the Complaint ("Am. Answer"), asserting multiple affirmative defenses and counterclaims, including a defense and a counterclaim based on the assertion that the '578 Patent is unenforceable due to inequitable conduct.  *See* Kettenbach GmbH Am. Answer, DE [72], at ¶¶ 199-200; Kettenbach GmBH Counterclaims, DE [72], at ¶¶ 36-46; Kettenbach LP Am. Answer, DE [73], at ¶¶ 199-200; Kettenbach LP Counterclaims, DE [73], at ¶¶ 36-46; Xinial Am. Answer, DE [74], at ¶¶ 199-200; Xinial Counterclaims, DE [74], at ¶¶ 36-46.  The PTAB concluded on February 21, 2024 that multiple claims in the '578 Patent were unpatentable, including claim 1, on which Plaintiff's patent infringement cause of action is based.  Notice of Appeal at 9; *see* Compl., ¶ 97.  Medmix appealed that Judgment to the Federal Circuit on February 29, 2024.  Notice of Appeal at 3.  As a result of this pending appeal, Medmix now moves to sever the patent claim from this action and stay the resulting patent infringement action only.  *See* Pl. Mot. Defendants move to stay the entire action and oppose severance of the patent claim. *See* Defs. Cross-Mot.  For the reasons set forth within, the Court grants Plaintiff's

Motion in part and denies it in part and grants Defendants' Cross-Motion in its entirety. This case is stayed pending the outcome of Medmix's appeal of the PTAB's Judgement to the Federal Circuit.

## I. BACKGROUND

This litigation has an extensive history, familiarity with which is presumed. *See* DE [71] at 2-14 (detailing the underlying facts of this action). Thus, the Court only provides a summary of facts and procedural history necessary to decide the instant motion.

### A. Relevant Facts

The facts herein are taken from the Complaint and Amended Answers and Counterclaims and are assumed true for the purposes of deciding this motion.

#### i. The Parties and the Products

Plaintiff is a corporation with its principal place of business in Haag, Switzerland and is a provider of dental products. Compl. ¶¶ 1, 8; *see* Letter Motion to Amend/Correct/Supplement Case Caption by Sulzer Mixpac AG, DE [75] (explaining that Plaintiff Sulzer Mixpac AG changed its name to medmix Switzerland AG). Kettenbach GmbH and Xinial are related German corporations with their principal places of business at the same address in Eschenburg, Germany. Compl. ¶¶ 9, 11. Kettenbach LP is a registered Delaware limited partnership with its principal place of business also in Eschenburg, Germany, and it maintains a regular place of business at 62-64 Enter Lane, Islandia, New York. *Id*. ¶ 10.

Plaintiff is the manufacturer of a proprietary system for mixing liquid components for dental applications (the "Mixpac System"), which has been sold under

3

the Mixpac brand since 1997. *Id.* ¶ 28. The Mixpac System consists of: (i) a dispenser-like caulking gun; (ii) a cartridge containing two-part chemical components, such as an epoxy with a catalyst and a resin; and (iii) a mixing tip that mixes the chemicals before they are applied. *Id.* ¶ 29. Medmix sells its system to formulators or material manufacturers like Defendants who fill the cartridges with their own dental materials, and then sell Mixpac-branded dispensers and mixing tips with filled cartridges. *Id.* ¶ 31. According to Medmix, its products and brand are well-known in the dental industry, and it has received several awards for the Mixpac System. *Id.* ¶¶ 31-33.

Plaintiff claims that Defendants conspired to make, import and sell dental cartridge mixing systems under the Kettenbach brands Futar, Identium, Panasil and Silginat (the "Accused Products") by creating a company, Xinial, to copy the Mixpac System and to deliver it to Plaintiff's other customers. *Id.* ¶ 2. Plaintiff alleges that the Accused Products include filled two-component cartridges and mixing tips. *Id.* ¶ 37. According to Plaintiff, Kettenbach GmbH controls Xinial and directs the sale and importation of the Accused Products to the United States, while Kettenbach LP distributes these products from its New York location to Medmix's customers including at the Greater New York Dental Meeting ("GNDYM"), the world's largest annual dental conference. *Id.* ¶ 2. Plaintiff claims that Defendants have passed off the Mixpac System as their own, infringing on Medmix's trademarks and patented technology. *Id.* ¶¶ 3-4.

4

### ii. *Defendants' Advertisements*

Plaintiff asserts that Defendants have made several false claims about the Accused Products compared to the Mixpac System and identifies five allegedly false advertisements. Mixpac claims that Kettenbach's ads intentionally mislead customers into buying the Accused Products instead of the Mixpac System. *Id.* ¶ 47.

Initially, Kettenbach advertised that the Accused Products "waste less material" and result in "20% less residual amount in your mixing tip." *Id.* ¶ 58. Medmix claims that because Kettenbach has already used the Mixpac System to sell its products for many years, the claim directly compares the Mixpac System with the Accused Products. *Id.* ¶ 59. Plaintiff alleges that this claim is quantitative, not subject to different meaning, and literally false in that the Accused Products waste between 11% and 39% more than the Mixpac System. *Id.* ¶¶ 60-61. According to Medmix, this advertisement omits material information and creates a false impression because it fails to disclose that Defendants' products waste more than the Mixpac System. *Id.* ¶ 62. Plaintiff claims that customers will see the claim of less residual waste and will believe its false or misleading meaning—that use of the Accused Products' mixing tips will lead to money savings and better mixing quality, and that these tips are compatible with the Mixpac System, injuring Plaintiff by diverting sales and lessening Medmix's goodwill. *Id.* ¶¶ 63-64.

Defendants' next advertisement states: "Continue to rely on our quality products 'Made in Germany,'" while displaying photographs of Mixpac System mixing tips. *Id.* ¶¶ 65-66. According to Medmix, all Mixpac Systems are made in Switzerland, their origin is material to the customer's purchase decision, and the false

5

statement that the products are "Made in Germany" deceives customers and induces them to buy the Accused Products. *Id*. ¶¶ 67-69. Plaintiff alleges that the "Made in Germany" claim creates a false impression that Kettenbach makes the Mixpac System, which in turn convinces the customer to trust the Accused Products and omits material information about who makes the Mixpac System. *Id*. ¶¶ 70-71. Plaintiff claims this has diverted sales from Mixpac and lessened its goodwill. *Id*. ¶ 72.

Next, Plaintiff claims that Kettenbach advertisements state: "get out even more of your favorite impression materials, such as Futar, Silginat, Panasil, and Identium, than before." *Id*. ¶¶ 73-74. According to Medmix, because Defendants have sold their own dental material using the Mixpac System for many years, this statement makes a direct comparison between the Mixpac System and the Accused Products. *Id*. Medmix asserts that this claim is false because the Accused Products result in higher waste per mixing tip compared to the Mixpac mixing tips. *Id*. ¶ 75. Plaintiff also claims that this advertisement creates a false impression that the Accused Products will save more material, but that Defendants know that their products waste more than the Mixpac System. *Id*. ¶ 76. Plaintiff claims that customers will be misled by the implied meaning in that use of the Accused Products will lead to money savings, better mixing, and that the Mixpac System and the Accused Products systems are compatible. *Id*. ¶ 78. According to Plaintiff, the claim is deceptive or has the capacity to deceive, is material, and has injured Mixpac by diverting sales and lessening its goodwill. *Id*. ¶ 79.

6

Medmix further asserts that Kettenbach advertises that "green becomes blue" and "yellow becomes red" using images of Mixpac mixing tips, falsely indicating that the Mixpac System has "become" the Accused Product. *Id.* ¶¶ 80-84. Medmix alleges that this advertisement misleads consumers by implying that the Accused Products are the same as or compatible with the Mixpac System. *Id.* ¶¶ 85, 86. According to Medmix, this claim is deceptive or has the capacity to deceive, is material, and has injured Plaintiff by diverting sales and lessening its goodwill. *Id.* ¶ 89.

Finally, Plaintiff alleges that Kettenbach advertises that the blue and red Accused Products are "unmistakable" and use a "unique color coding" so there is "no confusion with other mixing systems." *Id.* ¶ 90. According to Medmix, this claim is false because other competitors use blue or red for color coding. *Id.* ¶ 91. Plaintiff asserts that this claim is deceptive and has injured Medmix by diverting sales and lessening its goodwill. *Id.* ¶ 93.

### iii. The '539 Trademark

Plaintiff owns the "'539 Trademark", also referred to as the X Mark, the "MIXPAC Mark," and certain "Mixpac Trade Dress." *Id.* ¶ 44. Medmix claims it has used its distinctive X Mark with the Mixpac System to indicate Plaintiff as its source since at least 2013. *Id.* ¶ 38. Medmix alleges that the X Mark is well-known in the dental industry as a source indicator for the Mixpac System, and that customers buy mixing tips based on the X Mark. *Id.* ¶¶ 39-40. According to Plaintiff, since 2010, it has spent hundreds of thousands of dollars in advertising featuring the X Mark

7

through a variety of media and methods, including publications, websites, social media and giveaways during dental industry trade shows. *Id.* ¶¶ 42-43.

Medmix claims that Defendants' products include a stylized "X" logo that is confusingly similar to the X Mark. *Id.* ¶ 45. According to Plaintiff, Defendants' use of an X logo on competing dental products, coupled with their false and/or misleading advertisements, causes a likelihood of confusion and creates a false association of origin by implying that Defendants make the Mixpac System. *Id.* ¶ 46. Medmix claims that Defendants were aware of Mixpac's registered X Mark, but still contracted with third parties to sell Defendants' products with a similar X logo in the United States. *Id.* ¶ 102.

In their Counterclaims, Defendants assert that Medmix sought and obtained the '539 Trademark based on a foreign registration for the mark under Section 44(e) of the Lanham Act, which required Medmix to declare its *bona fide* intent to use the X Mark in United States commerce for the registered goods. *See* Kettenbach GmbH Counterclaims, DE [72], ¶ 12; Kettenbach LP Counterclaims, DE [73], ¶ 12; Xinial Counterclaims, DE [74], ¶ 12. They allege that Medmix lacked such intent to use the X Mark in United States commerce for the registered goods when it applied for trademark registration, when the registration issued, and in the present day. Kettenbach GmbH Counterclaims, ¶¶ 14-16; Kettenbach LP Counterclaims, ¶¶ 14-16; Xinial Counterclaims, ¶¶ 14-16. While Medmix may use a stylized MIXPAC Mark, Defendants claim this mark is different from the X Mark, and that they have different commercial impressions. Kettenbach GmbH Counterclaims, ¶ 17;

8

Kettenbach LP Counterclaims, ¶ 17; Xinial Counterclaims, ¶ 17.  Defendants further allege that the X Mark does not appear on Mixpac's website or in advertisements of any of its products.  Kettenbach GmbH Counterclaim ¶ 18; Kettenbach LP Counterclaim ¶ 18; Xinial Counterclaim ¶ 18.

> iv.   *The '578 Patent*

On April 21, 2015, the United States Patent and Trademark Office ("PTO") issued the '578 Patent, entitled "Discharge Arrangement having a Connecting Device between a Multi-Component Cartridge and an Accessory Part," to inventor Wilhelm A. Keller ("Keller").  Compl., ¶ 94; *see* Compl., Ex. B.  Plaintiff owns the right, title and interest in the '578 Patent, including the exclusive right to enforce the patent in the United States, because Keller assigned his interest in the '578 Patent to Medmix Systems AG on December 10, 2011, as recorded on April 5, 2012, and Medmix Systems AG assigned its interest in the patent to Plaintiff on May 23, 2019, as recorded on June 13, 2019, at the PTO.  Compl., ¶ 95.

Plaintiff alleges that the Accused Products infringe on "claim 1" of the '578 Patent.  Compl., ¶¶ 96-97; *see also* Compl., Ex. C.  Medmix also contends that the patent is valid and enforceable, and that Defendants were aware of the validity of the patent, but still made and contracted with third parties to sell the Accused Products in the United States.  Compl. ¶¶ 98-100.

Defendants counter that the '578 Patent is unenforceable due to inequitable conduct.  *See* Kettenbach GmbH Counterclaims, ¶¶ 37, 44-46; Kettenbach LP Counterclaims, ¶¶ 37, 44-46; Xinial Counterclaims, ¶¶ 37, 44-46.  They claim that

9

Keller, the inventor of the '578 Patent, and/or his prosecuting attorney knew of information material to the patentability prior to filing the application and withheld that information with a specific intent to deceive the PTO. Kettenbach GmbH Counterclaims, ¶ 46; Kettenbach LP Counterclaims, ¶ 46; Xinial Counterclaims, ¶ 46. But for that material information being withheld, according to Defendants, "claim 1" of the '578 Patent would not have been issued. *Id*.

### B. Procedural History

By way of Complaint ("Compl.") filed on November 26, 2021, Plaintiff commenced this action alleging: (i) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (ii) infringement of the '539 Trademark; (iii) infringement of the '578 Patent; (iv) false designations of origin in violation of 15 U.S.C. § 1125(a); (v) unfair competition under 15 U.S.C. § 1125; (vi) common-law trademark infringement; (vii) common-law unfair competition; (viii) deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349 and (ix) false advertising in violation of N.Y. Gen. Bus. Law § 350. *See* Compl., ¶¶ 106-183.

On September 14, 2022, Xinial filed a petition for *inter partes* review of the '578 Patent with the Patent Trial and Appeal Board (the "PTAB"). *See* Pl. Mot. at 1; *Medmix Switzerland AG v. Xinial Systems GmbH & Co. KG*, No. 24-CV-1516, DE [1-2] ("Notice of Appeal"), at 9 (Fed. Cir. Feb. 29, 2024). On May 4, 2023, each Defendant filed an Amended Answer to the Complaint, asserting multiple affirmative defenses and counterclaims, including a defense and a counterclaim based on the assertion that the '578 Patent is unenforceable due to inequitable conduct. *See* Kettenbach

10

GmbH Am. Answer, ¶¶ 199-200; Kettenbach GmBH Counterclaims, ¶¶ 36-46; Kettenbach LP Am. Answer, ¶¶ 199-200; Kettenbach LP Counterclaims, ¶¶ 36-46; Xinial Am. Answer, ¶¶ 199-200; Xinial Counterclaims, ¶¶ 36-46.  The PTAB concluded on February 21, 2024 that multiple claims in the '578 Patent were unpatentable, including claim 1, on which Plaintiff's patent infringement cause of action is based.  Notice of Appeal at 9; *see* Compl., ¶ 97.  Medmix appealed that Judgment to the Federal Circuit on February 29, 2024.  Notice of Appeal at 3. Pending the outcome of that appeal, Medmix now moves to sever the patent claim from this action and stay the resulting patent infringement action only.  *See* Pl. Mot. Defendants, on the other hand, move to stay the entire action and oppose severance of the patent claim.  *See* Defs. Cross-Mot.  On March 12, 2024, Medmix filed its Response opposing Defendants' Cross-Motion, *see* Pl. Response, DE [96], and Defendants filed their Response to Plaintiff's Motion the same day.  *See* Defs. Response, DE [95].  For the reasons set forth herein, the Court grants Plaintiff's Motion in part and denies it in part and grants Defendants' Cross-Motion in its entirety.

## II. DISCUSSION

### A. Plaintiff's Motion to Sever

#### i. *Legal Standards*

Plaintiff moves to sever its patent claim and proceed with this litigation on its non-patent causes of action while its appeal of the PTAB's Judgment is pending in the Federal Circuit.  *See* Pl. Mot.  Pursuant to Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a

11

party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Once a claim is severed, it becomes an "entirely independent" action, resulting in separate trials and judgments. *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502 (S.D.N.Y. 2013) (internal quotation and citation omitted).

> Courts in [the Second] Circuit consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id.* at 502-03 (citing *Cestone v. Gen. Cigar Holdings, Inc.*, No. 00-CV-3686, 2002 WL 424654, at *2–3 (S.D.N.Y. Mar. 18, 2002)).

Only one of the foregoing factors needs to weigh in favor of severance for the motion to be granted, but courts generally only sever claims when more than one criterion is met. *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114–15 (S.D.N.Y. 2015) (citing *Cestone*, 2002 WL 424654, at *2–3). "The moving party bears the burden of demonstrating that 'severance is required to avoid prejudice or confusion and to promote the ends of justice.'" *Id.* at 114 (quoting *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011)). Ultimately, however, "[t]he decision whether to grant a severance motion is committed to the sound discretion of the trial court." *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1082 (2d Cir. 1988) (internal citation omitted).

### *ii. Analysis*

Applying these standards, severance of Medmix's patent infringement claim is unwarranted. As to the first factor above, each of Plaintiff's claims, including the patent infringement cause of action, arises from Medmix's allegation that Defendants have "conspired to make, import, offer for sale, and sell" the Accused Products. *See* Compl., ¶ 2 (asserting that Defendants "designed the Accused Products with a connection between the cartridges and mixing tips that infringes… the '578 Patent.") This factor weighs against severing the patent and non-patent claims. *See C.R. v. Frameless Hardware Co. LLC*, No. 21-CV-01334, 2022 WL 21748067, at *3 (C.D. Cal. Dec. 9, 2022) (patent cause of action was not severed where all claims arose from the same "alleged theft of intellectual property" by that plaintiff's former employee).

Next, while Medmix's patent infringement cause of action will raise questions of law different from those in the non-patent causes of action, it shares common questions of fact with several other claims. For example, Plaintiff alleges that Defendants' claims about the design of the Accused Products, as compared to the design of the Mixpac System, are false and deceptive. *See* Compl., ¶¶ 58-79. Factual inquiry into the merits of these allegations will involve the design of the Accused Products and the Mixpac System, and will necessarily overlap with Plaintiff's patent infringement claims. Further, Medmix alleges that Defendants' importation of the Accused Products into the United States is related to their "willful infringement" of both Plaintiff's trademark and patent rights, so these two claims raise common questions of fact. Accordingly, the second factor weighs against severance of the

13

patent infringement claim. *See Repro-Med Sys., Inc. v. EMED Techs. Corp.*, No. 13-CV-01957, 2019 WL 569277, at *5 (E.D. Cal. Feb. 12, 2019) (declining to sever patent infringement cause of action where each party alleged that the other had made false comparisons between the products at issue, which formed the basis of each party's patent claim).

As to the third factor, severance will not promote judicial economy. As Defendants point out, if the Federal Circuit overturns the PTAB's decision on claim 1 of the '578 Patent, and the claims are severed, two trials are possible, and "substantial inefficiencies and duplication" will result because of the factual overlap discussed in the patent and non-patent claims discussed above. *See* Defs. Cross-Mot. at 2; *Frameless Hardware Co. LLC*, 2022 WL 21748067, at *4 (finding that severing patent and non-patent causes of action where two separate trials were possible would not promote judicial economy).

Next, as to whether severance would avoid prejudice, Medmix makes no direct argument about this factor. Instead, Plaintiff's Motion discusses prejudice as applicable to its motion to stay. *See* Pl. Mot. at 3; Pl. Response at 1-2. Accordingly, this factor is neutral. *See Frameless Hardware Co. LLC*, 2022 WL 21748067, at *4 (concluding that the prejudice factor was neutral in a severance analysis where neither party addressed it separately from its arguments pertaining to the pending motion to stay).

The fifth factor in the severance analysis, however, whether different witnesses and documentary proof are required for the separate claims, weighs in

14

favor of severance. As explained above, there is substantial factual overlap between the patent and non-patent causes of action. Medmix, however, alleges that different witnesses and proof will be required for the patent and non-patent causes of action. *See* Pl. Mot. at 3. Nevertheless, because only one of the five factors in the severance analysis favors severance, the Court denies Plaintiff's motion to sever the patent cause of action.

### B. The Parties' Cross-Motions to Stay

#### i. Legal Standards

Plaintiff moves for a partial stay as to the patent claim only, while Defendants move for a total stay. It is clear that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a [PTAB] reexamination." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Whether to grant a stay is within the court's discretion. *Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236, 2016 WL 6094114, at *2 (S.D.N.Y. Oct. 18, 2016) (citation omitted).

In the IPR context, courts analyze "motions to stay pending *inter partes* review using the framework applicable to motions to stay pending reexamination." *Universal Elecs., Inc. v. Universal Remote Control, Inc.,* 943 F. Supp. 2d 1028, 1030 (C.D. Cal. 2013); *see also SurfCast, Inc. v. Microsoft Corp.*, No. 12-CV-333, 2014 WL 6388489, at *1 (D. Me. Nov. 14, 2014) ("District Courts have continued to apply the framework governing stays with respect to the administrative process that preceded IPR"). Courts typically consider three factors in deciding a motion to stay pending

15

review by the PTAB: (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) the status of the case, including whether discovery is complete and a trial date set. *See, e.g., Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278, 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017); *SurfCast,* 2014 WL 6388489, at *1; *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.,* No. 12-CV-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014); *TouchTunes Music Corp. v. Rowe Int'l Corp.,* 676 F. Supp. 2d 169, 177 (S.D.N.Y. 2009). Courts conducting an undue prejudice review consider four sub-factors: (1) the timing of the request for *inter partes* review; (2) the timing of the request for a stay; (3) the status of the review proceeding; and (4) the relationship of the parties. *See Metrom Rail, LLC v. Siemens Mobility, Inc.*, No. 23-CV-3057, 2024 WL 323374, at *4 (S.D.N.Y. Jan. 29, 2024) (applying these factors to decide whether to stay a non-patent claim alongside a patent claim pending PTAB's *inter partes* review). Courts also apply these standards where the PTAB has completed its review and a party has appealed its conclusions to the Federal Circuit. *See, e.g., UNM Rainforest Innovations v. TP-Link Techs. Co.*, No. 19-CV-00262, 2023 WL 2638273, at *2 (W.D. Tex. Mar. 24, 2023); *Orbital Australia Pty v. Daimler AG*, No. 15-CV-12398, 2015 WL 5439774, at *3 (E.D. Mich. Sept. 15, 2015) (applying the above standards and granting a stay through and including any future appeals to the Federal Circuit); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, No. 12-CV-05501, 2015 WL 435457, at *2 (N.D. Cal. Feb. 2, 2015).

### *ii. Analysis*

Initially, the parties both seek a stay of Count III, Medmix's patent infringement claim, pending the outcome of Plaintiff's appeal to the Federal Circuit of the PTAB's Judgment on the '578 Patent. *See* Pl. Mot. at 1; Defs. Cross-Mot. at 2. Applying the factors set forth in *Rovi Guides, Inc.*, the first factor, whether the stay would unduly prejudice or present a clear tactical disadvantage to the **non-moving party**, is inapplicable because both parties move for a stay of this claim. *See* 2017 WL 4876305 at *3. As to the second factor, should the Federal Circuit uphold the PTAB's decision that the challenged claims of the '578 Patent are unpatentable, the patent infringement claim in this case would become moot. *See Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013)). Accordingly, the ultimate outcome of the IPR proceedings with respect to the '578 Patent will simplify the patent infringement claim here. *See Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 19-CV-4297, 2021 WL 195163, at *9 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 15 F.4th 1101 (Fed. Cir. 2021). Finally, the stage of the litigation favors a stay of the patent claim. "Expert discovery has not even begun, no claim construction hearing has been scheduled, a claim construction order has not issued, and a trial date has not been set." Defs. Cross-Mot. at 3; *Kannuu Pty Ltd.*, 2021 WL 195163, at *10 ("Courts in [the Second] Circuit have concluded that a suit is at an early enough stage to favor a stay where there has been limited to no discovery, and neither a claim construction hearing nor a trial has been scheduled.") (citation omitted). Accordingly,

17

a stay of the patent infringement claim, Count III, is warranted.  The remaining question before the Court is whether the other counts in the Complaint should also be stayed.

A stay of the non-patent claims is warranted.  Medmix argues that it would be prejudiced if the entire action were stayed, rather than allowing the non-patent claims to proceed, because (i) such a stay would delay the case, (ii) Plaintiff and Defendants are direct competitors, and (iii) Defendants are actively practicing "deception in the marketplace," Pl. Mot. at 2, "continu[ing] to use the confusing X logo to sell their product," Pl. Response at 2, and harming the public interest through false advertising and trademark infringement.  *See id.*  In support of these claims, Medmix attaches a press release published February 27, 2024, that it claims is intended to mislead consumers into "believing that Kettenbach won the entire U.S. Case," *see* Pl. Response, Ex. A, and a partial screenshot of a Kettenbach LinkedIn post including a picture of an Accused Product with the challenged X logo.  *See* Pl. Response, Ex. B.  Defendants respond that Medmix does not directly sell the Mixpac System to consumers and the parties are therefore not direct competitors.  *See* Defs. Cross-Mot. at 3.  Further, Defendants argue that they stopped using the challenged advertisements and challenged X logo about three years ago, and that the LinkedIn post attached to Plaintiff's response was erroneously posted and has since been removed.  *See* Defs. Response at 2.

Initially, "mere delay in the litigation does not establish undue prejudice." *Rovi Guides, Inc.*, 2017 WL 4876305, at \*4.  And in any event, courts conducting an

18

undue prejudice review consider four sub-factors: (1) the timing of the request for *inter partes* review; (2) the timing of the request for a stay; (3) the status of the review proceeding; and (4) the relationship of the parties. *See Metrom Rail, LLC*, 2024 WL 323374, at *4 (S.D.N.Y. Jan. 29, 2024). Neither party makes an argument related to the first two sub-factors, and the Court does not conclude that either request was dilatory. These two sub-factors, then, are neutral. As to the third sub-factor, courts have found that where the PTAB has already instituted review on the challenged patent claims, a stay is favored. *See Nanobebe US Inc. v. Mayborn (UK) Ltd.*, No. 21-CV-08444, 2023 WL 4993642, at *4 (S.D.N.Y. Aug. 4, 2023); *Rovi Guides, Inc.*, 2017 WL 4876305, at *4. Here, the PTAB has already issued a decision on the challenged claim of the '578 Patent. Accordingly, the third sub-factor favors a stay of the entire action. *See Metrom Rail, LLC*, 2024 WL 323374, at *4. Finally, Medmix has not demonstrated that the relationship of the parties would lead to prejudice if the entire action were stayed. Prejudice cannot be presumed merely because parties are direct competitors without more evidence. *See PopSockets LLC v. Quest USA Corp.*, No. 17-CV-3653, 2018 WL 4660374, at *2 (E.D.N.Y. Sept. 28, 2018). Plaintiff attaches two pieces of evidence to its Response: a press release issued by Kettenbach concerning the PTAB *inter partes* review, and a LinkedIn post using an image of an Accused Product with the challenged X logo. *See* Pl. Response, Exs. A & B. The first exhibit is not relevant because it concerns the very patent infringement claim that Medmix moved to stay, not the non-patent claims it seeks to advance. The second exhibit is a singular image, presented without context, which does not reach the level of proof

19

required to conclude that Plaintiff would be unduly prejudiced by a stay of all causes of action. *See PopSockets LLC*, 2018 WL 4660374, at *2 (where party opposing a stay of non-patent claims alongside a patent claim "puts forth no evidence of the magnitude" of alleged "loss of goodwill, brand erosion, and market confusion," it did not establish undue prejudice). The "undue prejudice" sub-factors therefore weigh in favor of a stay of all claims.

As to the second factor, the non-patent claims are not likely to be simplified by the outcome of Plaintiff's appeal to the Federal Circuit, so this factor weighs against a stay of the non-patent causes of action. The third factor, namely the status of the case, weighs in favor of a total stay. *See Kannuu Pty Ltd.*, 2021 WL 195163, at *10. Accordingly, on the balance, these factors favor a stay of the entire action.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion is granted in part and denied in part, and Defendants' Cross-Motion is granted in its entirety. This action is stayed pending the outcome of Medmix's appeal of the PTAB's Judgement to the Federal Circuit.

Dated: Central Islip, New York
May 3, 2024

**SO ORDERED.**

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge